## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| David Rebischke, on behalf of himself and all others similarly situated, | Case No. 14-cv-624 (SRN/BRT) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Tile Shop, LLC, The, | |
| Defendant. | |

Paul J. Lukas and Michele R. Fisher, Nichols Kaster, PLLP, 80 South 8th St., Ste. 4600, Minneapolis, MN 55402; J. Derek Braziel, Lee & Braziel, LLP, 1801 North Lamar St., Ste. 325, Dallas, TX 75202; Rowdy B. Meeks, Rowdy Meeks Legal Group LLC, 8201 Mission Rd., Ste. 250, Prairie Village, KS 66208, for Plaintiffs.

Joseph M. Sokolowski, Ashley R. Thronson, Pamela Abbate-Dattilo, and Timothy Billion, Fredrikson & Byron, P.A., 200 South 6th St., Ste. 4000, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant's Motion for Summary Judgment ("Mot. for Summ. J.") [Doc. No. 66].  For the reasons set forth below, the Motion is granted.

## I.    BACKGROUND

The material facts of this matter are undisputed.  Instead, the parties dispute the significance of some facts and which facts are relevant.  The Court notes these disputes where necessary.

**A. The Tile Shop, Store Managers, and Their Compensation**

Defendant The Tile Shop, LLC ("The Tile Shop") sells manufactured and natural stone tiles, settings, and related accessories and maintenance items. (Decl. of Leigh Behrman ("Behrman Decl.") at ¶ 2 [Doc. No. 71].) During the relevant period—between March of 2011 and March of 2014[1]—The Tile Shop experienced significant growth, expanding from 54 to 108 stores nationwide. (Id. at ¶ 3.) The number of Tile Shop employees more than doubled during this time, but "Human Resources and payroll administration functions did not grow commensurately." (Id. at ¶ 4.)

A Store Manager oversees each of The Tile Shop's retail locations. (Id. at ¶ 5.) Store Managers "regularly direct the work of all employees at the store they manager [sic], and they have authority to hire and fire employees." (Id.) Compensation for Store Managers consists of four parts: (1) a fixed salary; (2) commissions; (3) spiffs; and (4) bonuses. (Id. at ¶ 6; Decl. of Carl Randazzo ("Randazzo Decl.") at ¶ 2 [Doc. No. 78].) Store Managers' fixed salaries range between $42,000 and $85,000—based on the store's sales for the prior year—and are paid out in fixed amounts each pay period. (Behrman Decl. at ¶ 6; see Randazzo Decl. at ¶ 2.) However, the incentive-based portion of Store Managers' compensation—bonuses, commissions, and spiffs—can vary widely from paycheck to paycheck. (Behrman Decl. at ¶ 6; see Randazzo Decl. at ¶ 2.) Bonuses are

---

[1] The statute of limitations for claims under the Fair Labor Standards Act ("FLSA"), like those here, is two years unless the plaintiff can show the defendant acted willfully, in which case the statute of limitations is three years. See 29 U.S.C. § 255(a). The Tile Shop argues Plaintiffs have failed to show that it willfully violated FLSA. (See Def.'s Mem. in Supp. at 4, n.1 [Doc. No. 68].) However, since it does not change the outcome here, the Court assumes without deciding that the three year statute of limitations applies.

based on store performance and can be positive or "negative." (Behrman Decl. at ¶ 7; see Randazzo Decl. at ¶ 2.) A negative bonus occurs when a store fails to meet its budget or other performance goals. (Behrman Decl. at ¶ 7; see Randazzo Decl. at ¶ 2.)

Store Managers report to Regional Sales Managers ("Regional Managers") who each oversee 20-30 Store Managers. (Behrman Decl. at ¶ 5.) A single Regional Manager is responsible for calculating all Store Managers' bonuses, positive or negative, on a monthly basis and submitting that information "for review and approval" to the other Regional Managers. (Id. at ¶ 8.) However, The Tile Shop's centralized Human Resources Department "reviews [Store Managers' bonus] information and Human Resources—not the Regional Sales Managers—determines the amount of each Store Manager's compensation each pay period." (Id.) Regional Managers have "no control or review" over payroll and "do not establish guidelines or policies for payroll administration." (Id. at ¶ 10.) They do not have the power to deduct negative bonuses from a Store Manager's salary. (Id.)

When a negative bonus is not offset by a Store Manager's commissions and spiffs, it is "flagged" by Human Resources "so that the negative bonus does not dip into the employee's salary." (Id. at ¶ 7.) Put another way, negative bonuses are offset against commissions and spiffs, but should "never" be offset against a Store Manager's fixed salary. (See id.; Randazzo Decl. at ¶ 2.) The Tile Shop gave the following example of how deductions appeared on Store Managers' bi-weekly payroll statements:

**Earnings**

| Regular | $3,400.00 |
|---|---|
| Bonus | -$235.00 |
| Commission | $335.00 |
| Spiff | $2.50 |
| Vacation | 0 |
| Gross Pay | **$3,502.50** |

(Behrman Decl. at ¶ 9.)

In response to an order from the Court to supplement the record, (see Doc. No. 81), The Tile Shop conducted a payroll audit which showed that on at least twelve occasions during the relevant period, Store Managers' negative bonuses exceeded commissions and spiffs, but were *not* deducted from fixed salaries.[2]   (Decl. of Marcy Rasmussen ("Rasmussen Decl.") [Doc. No. 87], Ex. A ("Supp. Payroll Audit") [Doc. No. 88].)  The Tile Shop explained that the number of times negative bonuses were not taken from fixed salaries was actually higher because the audit did not account for instances where Human Resources adjusted negative bonuses so that they did not exceed commissions or spiffs before entering the data into the payroll system, or "backed out" a negative bonus before issuing the paycheck.  (Rasmussen Decl. at ¶ 5.)

### B.  Plaintiffs, Their Claims, and the Improper Deductions

Plaintiff David Rebischke ("Rebischke") is a former Store Manager for The Tile Shop.  (Compl. at ¶ 2 [Doc. No. 1].)  On behalf of himself and all other Store Managers employed by The Tile Shop between March of 2011 and March of 2014 (collectively, "Plaintiffs"), Rebischke alleges that The Tile Shop violated the Fair Labor Standards Act

---

[2] Plaintiffs offer a series of objections to this evidence, which the Court addresses below.

("FLSA") by not paying Plaintiffs for the overtime hours they worked.  (Id. at ¶¶ 10, 36–37.)  Specifically, Plaintiffs claim that they are nonexempt employees entitled to overtime under FLSA because The Tile Shop improperly deducted negative bonuses from their fixed salaries.  (See id. at ¶¶ 19–20, 34–35.)

In August of 2013—before this lawsuit was brought—a Store Manager ("Krohn") sent The Tile Shop's Vice President for Human Resources and Compliance ("Behrman") an email showing that a negative bonus was deducted not just from his commissions and spiffs, but also his fixed salary.  (Behrman Decl. at ¶ 13.)  Krohn challenged this deduction.  (Id.)  That same day, Behrman apologized and explained that the deduction from Krohn's salary was a mistake.  (Id. at ¶ 14.)  Krohn was reimbursed the full amount deducted from his fixed salary six days after he raised the issue.  (Id.)  Behrman also informed Krohn that he had discovered a similar deduction from another Store Manager's fixed salary in an earlier pay period and had similarly corrected the error by reimbursing the improperly deducted amount.  (Id. at ¶ 15.)

The Tile Shop contends that the next time the issue of improper salary deductions was brought to its attention was when this suit was filed.  (Id. at ¶ 16.)  Upon receiving the complaint, The Tile Shop conducted an audit of all Store Managers' payroll records for the preceding three years.  (Id.)  "The audit spanned all 150 Store Managers, 78 payroll periods, and 4,737 checks issued to Store Managers totaling $21,243,784.68."  (Id.)  The audit revealed that during the relevant time, there were twenty-two negative bonus deductions from the fixed salaries of sixteen Store Managers.  (See id.)  Put another way, approximately 0.5% of payroll checks issued to Store Managers during that

time contained improper salary deductions.   These twenty-two deductions totaled $5,032.89.   (Id.)   The Tile Shop promptly sent a letter to each Store Manager who experienced an improper salary deduction and reimbursed them the deducted amount. (Id.)

Plaintiffs agree that the twenty-two negative bonus deductions just described were taken from Store Managers' salaries during the relevant period.   (See Pls.' Mem. in Opp. at 6–7 [Doc. No. 75].)   However, they argue that "[t]his does not tell the whole story . . . ."   (Id.)   Rather, they claim that a total of 109 improper deductions were taken from thirty-eight Store Managers' salaries.   (Id. (citing Pl.'s Mem. in Opp., Ex. A ("Paycheck Deductions Spreadsheet") at 1–4 [Doc. No. 76-1]).)   To reach this number, Plaintiffs contend that commissions and spiffs are part of Store Managers' fixed salaries, and thus deductions from these amounts were also improper because The Tile Shop's Commissions and Spiffs Policy (the "Commissions and Spiffs Policy") did not explicitly allow for them.   (Id.)   The Commissions and Spiffs Policy is silent on the subject of deductions.   (See Pl.'s Mem. in Opp., Ex. G ("Commissions and Spiffs Policy") [Doc. No. 76-1].)

### 1.  The Tile Shop's Alleged Policy or Practice of Improper Deductions

Plaintiffs allege that The Tile Shop has a long-standing policy or practice of making improper salary deductions.   (See Pls.' Mem. in Opp. at 12–18.)   They highlight four pieces of evidence they believe support this contention.   First, Plaintiffs present an email sent by Regional Manager Dan Granados ("Granados") on July 31, 2013 to Store Managers in his region.   (Pls.' Mem. in Opp., Ex. F ("Granados Email") [Doc. No. 76-

6

1].)  In the email, Granados notes that some stores are not on track to make their sales

numbers.  (Granados Email at 4896.[3])  He goes on to make the following threat:

> **If you are not going to hit plan, I'm going to hit your bonus' [sic] in
> relation to the % short you finish……..**
> **Many of you know in your hearts that I take care of you every month,
> no matter how bad you finish in some cases……**
> **If I believe you could have done more than what you finish with, I
> "WILL' hit you with everything….**
> **If that wipes out your bonus.. so be it…. If it takes from your salary….
> So be it ………………..**
> **I have never been so serious folks…………**
> ***Look for Yourselves……*[4]**

(Id. (all emphasis original).)  Plaintiffs allege that this threat comports with threats they

heard or received from other Regional Managers and The Tile Shop's Vice President

("VP") of Sales[5] regarding salary deductions based on poor performance.  (See Pls.'

Mem. in Opp., Ex. F ("Store Manager Affs.") at ¶ 4 [Doc. No. 76-2].)

Second, Plaintiffs note that on Store Managers' paychecks, negative bonuses

appear under the line where fixed salary is listed, not under the lines for commissions and

---

[3] The Court cites to the last four digits of the Bates number as they appear in the lower
right hand corner of this exhibit.

[4] The Tile Shop's Human Resources Department was unaware of Granados email until
this lawsuit was filed.  (Behrman Decl. at ¶ 12.)  Upon learning of his threat, Granados
was reprimanded by Human Resources, told that The Tile Shop's compensation policy
did not allow for the deduction of negative bonuses from fixed salaries, and instructed to
never again threaten a salary deduction.  (Id.; Decl. of Dan Granados ("Granados Decl.")
at ¶ 7 [Doc. No. 70].)  Granados states that he made no attempt to follow through on his
threat, nor could he have since Regional Managers do not have the authority to reduce
Store Managers' salaries.  (Granados Decl. at ¶¶ 4–6.)

[5] The Tile Shop's VP of Sales at the time, Carl Randazzo, denies he ever threatened
salary deductions or stated that it was The Tile Shop's policy to employ such deductions.
(Randazzo Decl. at ¶¶ 4–5.)

spiffs.  (See Pls.' Mem. in Opp. at 7–8; supra Part I.A.1.)  They argue that this placement

shows that the intent was to deduct negative bonuses from salaries and not commissions

or spiffs.  (See Pls.' Mem. in Opp. at 8, 18–19.)  Third, Plaintiffs point to their subjective

belief that—based on the threats and deductions described above—The Tile Shop had a

"clearly communicated policy" of deducting negative bonuses from the salaries of Store

Managers.  (See id. at 8, 17–18.[6])  Fourth, Plaintiffs highlight the 109 negative bonus

deductions taken from the salaries, spiffs, and commissions of thirty-eight Store

Managers during the relevant period.  (See id. at 14–16.)

## II.   DISCUSSION

### A.  Legal Standard

Summary judgment is proper if, drawing all reasonable inferences in favor of the

non-moving party, there is no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett,

477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50

(1986); Morriss v. BNSF Ry. Co., 817 F.3d 1104, 1107 (8th Cir. 2016), cert. denied,

(U.S. Oct. 3, 2016).  "Summary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

whole, which are designed 'to secure the just, speedy, and inexpensive determination of

every action.'"  Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

---

[6] Plaintiffs again cite the sworn affidavits of several Store Managers wherein they describe their subjective belief about The Tile Shop's policy of deductions and their efforts to avoid those deductions.  (See Store Manager Affs. at ¶¶ 7–8 [Doc. No. 76-2].)

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.   Id. at 323.   However, a party opposing summary judgment "'may not rest upon the mere allegation or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"   Ingrassia v. Schafer, 825 F.3d 891, 896 (8th Cir. 2016) (quoting Anderson, 477 U.S. at 256–57).   "[T]he nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'"   Conseco Life Ins. Co. v. Williams, 620 F.3d 902, 910 (8th Cir. 2010) (quoting Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).   Summary judgment is proper where the non-moving party fails "'to make a showing sufficient to establish the existence of an element essential to that party's case . . . .'"   Walz v. Ameriprise Fin., Inc., 779 F.3d 842, 844 (8th Cir. 2015) (quoting Celotex, 477 U.S. at 322).   While the moving party bears the burden of showing that the facts are undisputed, a judge is not confined to considering only the materials cited by the parties, and "it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## B.  The Fair Labor Standards Act and Its Relevant Exemptions

The FLSA was enacted "to protect the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others[,]" and is to be broadly interpreted and applied "because it is remedial and humanitarian in purpose."   Specht v. City of Sioux Falls, 639 F.3d 814, 819 (8th Cir. 2011) (quotations and citations omitted).   To accomplish this goal, the FLSA requires, in relevant part, that

employees who work more than forty hours per week be paid overtime.  29 U.S.C. § 207(a)(1).    However, there are exemptions from this requirement for employees employed in bona fide executive, administrative, or professional capacities.  29 U.S.C. § 213(a)(1).    The employer bears the burden of proving an exemption applies to the employee(s) in question.  <u>Madden v. Lumber One Home Ctr., Inc.</u>, 745 F.3d 899, 903 (8th Cir. 2014).

To meet its burden in proving an exemption, an employer must establish that an employee's duties, salary level, and salary basis meet certain thresholds.  <u>See</u> 29 C.F.R. § 541.700 (duties test); 29 C.F.R. § 541.600 (salary level test); 29 C.F.R. § 541.602 (salary basis test).  Plaintiffs do not dispute that Store Managers satisfy the duties and salary level tests.  Instead, they argue that Store Managers were not paid on a salary basis.  (<u>See</u> Compl. at ¶¶ 18–19, 22, 34; Pls.' Mem. in Opp. at 11.)

In general, the salary basis test requires that "the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."[7]  29 C.F.R. § 541.602(a).  An employer may also provide an exempt employee with "additional compensation"— beyond guaranteed, predetermined salary—without losing the exemption or violating the salary basis test.  29 C.F.R. § 541.604(a).  However, this additional compensation—

---

[7]  "Because the salary-basis test is a creature of the Secretary [of Labor]'s own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation."  <u>Auer v. Robbins</u>, 519 U.S. 452, 461 (1997).

unlike fixed salary—may be reduced based on work performance. See Havey v. Homebound Mortg., Inc., 547 F.3d 158, 165 (2d Cir. 2008) ("A two-part salary scheme in which employees receive a predetermined amount, plus, on a quarterly prospective basis, an additional portion subject to deductions for quality errors does not violate the salary-basis test . . . ." (quotations omitted)); Lovelady v. Allsup's Convenience Stores, Inc., 304 F. App'x 301, 304 (5th Cir. 2008) ("Deductions or reductions from bonus payments do not affect an employee's status as an exempt employee so long as the requisite minimum [] salary is paid."); Coppage v. Bradshaw, 665 F. Supp. 2d 1361, 1366 (N.D. Ga. 2009) ("[W]here an exempt employee receives additional compensation above his guaranteed minimum salary, an employer may make deductions without destroying the salary basis."); Phillips v. Capital Toyota, Inc., No. 1:05-CV-215, 2006 WL 1408688, at *4 (E.D. Tenn. May 22, 2006) ("[T]he key is not whether an employee's overall compensation is subject to reduction, but rather if the *predetermined* amount is subject to reduction."); see also Bell v. Callaway Partners, LLC, No. 1:06-CV-1993-CC, 2010 WL 6231196, at *5–10 (N.D. Ga. Feb. 5, 2010), aff'd, 394 F. App'x 632 (11th Cir. 2010) (collecting cases and Department of Labor opinions that held that deductions from an employee's "additional compensation" did not violate the salary basis test, rejecting the plaintiffs' argument to the contrary, and awarding summary judgment to the defendant); Kennedy v. Commonwealth Edison Co., 252 F. Supp. 2d 737, 742 (C.D. Ill. 2003), aff'd, 410 F.3d 365 (7th Cir. 2005) ("It is now clear . . . that whether or not there is any deduction in an employee's regular salary is the *sine qua non* of the FLSA regulation defining 'salary basis.'").

11

**1.  What Portions of Store Managers' Compensation Are Fixed Salary**

Plaintiffs argue that the Tile Shop does not pay Store Managers on a salary basis in part because it deducts negative bonuses from commissions and spiffs despite the Commissions and Spiffs Policy making no mention of deductions.  (See Pls.' Mem. in Opp. at  7, 15, 18–20.)  In essence, Plaintiffs' contention is that commissions and spiffs are actually part of Store Managers' fixed salaries.  However, neither the evidence nor the law supports this contention.

The Tile Shop's declarations and policies show that Store Managers' bonuses, commissions, and spiffs (i.e., incentive pay) are separate and distinct from fixed salaries. Most notably, commissions, spiffs, and bonuses vary widely from paycheck-to-paycheck based on performance and sales while fixed salaries do not.  By definition then, Store Managers' incentive pay is not "predetermined" like fixed salary.  See 29 C.F.R. §§ 541.602(a), 541.604(a).

The fact that the Commissions and Spiffs Policy does not specifically allow for negative bonus deductions is of no consequence.  The FLSA mandates employment *practice*s whereby employees receive guaranteed salaries, not explicit employment policies to that effect.  See 29 C.F.R. §§ 541.602(a) ("An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee *regularly receives* . . . a predetermined amount . . . .") (emphasis added), 541.604(a) ("An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the *employment arrangement*

12

also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." (emphasis added); Orton v. Johnny's Lunch Franchise, LLC, 668 F.3d 843, 848 (6th Cir. 2012) ("The new (2004) [FLSA] regulations . . . establish that employment agreements are no longer the relevant starting point for whether an employee is paid on a salary basis.   The question is therefore not what [an employee] was owed under his employment agreement; rather, the question is what compensation [the employee] actually received."); Hughes v. Gulf Interstate Field Servs., Inc., No. 2:14-CV-000432, 2016 WL 4197596, at *4 (S.D. Ohio Aug. 8, 2016) ("It is not written descriptors of the payment policies that are relevant to the salary-basis test inquiry, but rather the actual payment practice.").   Plaintiffs do not dispute—and the evidence plainly shows—that Store Managers received fixed salaries that were distinct from bonuses, commissions, and spiffs.

The Tile Shop's commissions, bonuses, and spiffs are the sort of "additional compensation" an employer may offer without losing a Store Manager's exempt status under FLSA.   See 29 C.F.R. § 541.604(a).   As such, The Tile Shop may take performance-based deductions—like negative bonus deductions—from commissions and spiffs without losing the exemption.   See Havey, 547 F.3d at 165; Lovelady, 304 F. App'x at 304; Coppage, 665 F. Supp. 2d at 1366; Phillips, 2006 WL 1408688 at *4; see also Bell, 2010 WL 6231196 at *5–10.   Thus, the only relevant deductions to consider are

the twenty-two negative bonus deductions taken from Store Managers' fixed salaries between March of 2011 and March of 2014.[8]

## C. The Effect of Improper Deductions

As described above, to satisfy the salary basis test, an employee must be paid a predetermined amount that is not subject to deductions for the quality or quantity of work performed.  See 29 C.F.R. § 541.602(a).  However, not all improper salary deductions result in the loss of the FLSA exemption.  See 29 C.F.R. § 541.603.  The Department of Labor ("DOL") provides the following relevant guidance about the effect of improper deductions:

> (a) An employer who makes improper deductions from salary shall lose the exemption *if the facts demonstrate that the employer did not intend to pay employees on a salary basis*. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.
>
> …

---

[8] The Tile Shop argues that two of these twenty-two deductions fall outside the statute of limitations period.  (See Def.'s Mem. in Supp. at 10, n.5)  It is unclear whether improper deductions that fall outside of the statute of limitations may be considered when assessing whether an employer had an actual practice of making such deductions, or whether those deductions were isolated.  See Smith v. Pepper Source, Ltd., No. 5:12-CV-05027, 2013 WL 2250305, at *3–4 (W.D. Ark. May 22, 2013).  However, since it does not change the outcome here, the Court assumes—as did The Tile Shop—without deciding that the two deductions that fall outside the statute of limitations should be considered.  See id.

(c) Improper deductions that are *either isolated or inadvertent* will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions.

…

(e) This section *shall not be construed in an unduly technical manner so as to defeat the exemption.*

29 C.F.R. § 541.603(a), (c), (e) (emphasis added).   Section 541.603(a) is sometimes referred to as the "actual practice provision" while subsection (c) is commonly referred to as the "window of correction."

The Tile Shop argues that despite the twenty-two improper deductions, it is entitled to summary judgment based on the window of correction because those deductions were isolated and inadvertent.  (Def.'s Mem. in Supp. at 15–19 [Doc. No. 68]; Def.'s Reply at 12–14 [Doc. No. 77].)  Notably, The Tile Shop claims that the window of correction alone, regardless of the actual practice provision, allows for summary judgment.  (See Def.'s Mem. in Supp. at 15, 19; Def.'s Reply at 2, 12.)  However, The Tile Shop contends that even if the actual practice provision applied, the undisputed facts show it did not have an actual practice of taking improper deductions.  (See Def.'s Mem. in Supp. at 19–31; Def.'s Reply at 5–12.)

Conversely, Plaintiffs argue that there are disputed questions of fact as to whether The Tile Shop has an actual practice of taking improper deductions.  (See Pls.' Mem. in Opp. at 13–18.)  Plaintiffs also contend that the window of correction is not available to The Tile Shop because it cannot satisfy the actual practice provision (i.e., arguing that the

15

actual practice provision is a "prerequisite" that must be met before the window of correction is available) and because the improper deductions were taken intentionally. (See id. at 20–26.)

### 1. Isolated or Inadvertent Improper Deductions and the Window of Correction

Plaintiffs' implicit argument is that summary judgment based on the window of correction is inappropriate because there are disputed facts about whether The Tile Shop intended to make the twenty-two improper salary deductions.   (See id. at 1–3, 25–26.) The Tile Shop contends that an employer's intent is irrelevant to the window of correction, so long as the improper deductions were isolated.   (See Def.'s Reply at 12–14.)   The Tile Shop is correct—the window of correction allows for even intentional improper deductions so long as they are isolated and reimbursed.

A recent Tenth Circuit opinion persuasively explains why the window of correction applies even to intentional, but isolated, improper salary deductions.  See Ellis v. J.R.'s Country Stores, Inc., 779 F.3d 1184, 1203–05 (10th Cir. 2015).   There, the plaintiff ("Ellis") argued that the window of correction "is only triggered where the improper deduction is both isolated and unintentional."  Id. at 1204.  The Tenth Circuit rejected this argument.  See id. at 1204–05.  Looking to the language of the regulation itself, the court held "it is apparent that this language renders the window-of-correction defense available to an employer who has made '[i]mproper deductions that are *either isolated or* inadvertent,' but has 'reimburse[d] the employees for such improper deductions.'"  Id. at 1204 (quoting 29 C.F.R. § 541.603(c)) (alterations and emphasis

original).  The use of the disjunctive "or" meant that "the district court could choose

between 'isolated' and 'inadvertent' deductions and that both alternatives could satisfy

the statute."  <u>Id.</u>  The Tenth Circuit explained:

> The fact that one purpose of the FLSA is to ensure overtime pay for non-exempt employees does not preclude the possibility that an employer may intentionally dock an exempt employee's pay and avoid all liability for overtime simply by reimbursing the employee.  Such a situation does *not* necessarily abuse the window-of-correction defense or eviscerate the employee's exempt status—provided, of course, that the intentional (i.e., not inadvertent) deduction was isolated.

<u>Id.</u> at 1205 (citations and quotations omitted) (emphasis original).  The Court noted that

Ellis' understanding that the window of correction only applied to unintentional

deductions also ignored subsection (e)'s directive that § 541.603 "not be construed in an

unduly technical manner so as to defeat the exemption."  <u>Id.</u> at 1205.

Still, some courts—often without expressly acknowledging doing so and citing

outdated case law—hold that the window of correction is only available in relation to

unintentional improper salary deductions.  <u>See, e.g.</u>, <u>Scholtisek v. Eldre Corp.</u>, 697 F.

Supp. 2d 445, 453 (W.D.N.Y. 2010); <u>Shafir v. Continuum Health Care Partners, Inc.</u>, No.

12-CV-5794 (KBF), 2016 WL 205435, at *5 (S.D.N.Y. Jan. 15, 2016); <u>Swartz v. DJ</u>

<u>Eng'g, Inc.</u>, No. 12-CV-01029-DDC-KGG, 2015 WL 4139376, at *16 (D. Kan. July 9,

2015); <u>Castellino v. M.I. Friday, Inc.</u>, No. CIV.A. 11-261, 2012 WL 2513500, at *9

(W.D. Pa. June 29, 2012).  Respectfully, as discussed in more detail below, the Court

disagrees with these holdings in light of the 2004 amendments to 29 C.F.R. § 541.603

and the plain language of that regulation.  <u>See</u> <u>infra</u> Part II.C.3.a.  To find that the

window of correction is only available when improper deductions are unintentional

ignores the disjunctive language of the regulation and leads to illogical results.  See, e.g.,
Castellino, 2012 WL 2513500 at *8–9 (noting the window of correction's disjunctive
language, holding that the window of correction applied to deductions that were
inadvertent but not isolated, but then in the next sentence declaring that the window of
correction would not apply to deductions that were isolated but intentional).

Plaintiffs' argument fails for the reasons articulated in Ellis.  To understand that
the window of correction is only available for unintentional improper deductions ignores
the plain language of § 541.603(c), which allows for *either* isolated *or* inadvertent
deductions.  The question then is whether The Tile Shop's twenty-two improper salary
deductions were inadvertent or isolated.[9]

### 2.  The Tile Shop's Improper Salary Deductions

The Tile Shop argues that its improper deductions were both isolated and
inadvertent.  (See Def.'s Mem. in Supp. at 17.)  It claims that the deductions were
inadvertent because they were a result of human error in the Human Resources
Department that occurred when that Department was struggling to keep up with The Tile
Shop's rapid growth.  (See id. at 17–19.)  The Tile Shop contends that the improper
deductions were also isolated by virtue of the small total number of deductions, the small

---

[9] It is undisputed that all sixteen Store Managers who suffered improper negative bonus
deductions from their fixed salaries have been reimbursed the deducted amount.
(Behrman Decl. at ¶ 16.)  Plaintiffs claim that not all Store Managers have been
reimbursed, but they base this argument on their understanding that deductions from
commissions and spiffs were also improper.  As previously explained, The Tile Shop's
deductions from commissions and spiffs were not improper under the salary basis test.
See supra Part II.B.1.

percentage of Store Manager paychecks that experienced a deduction, and the small total dollar amount of the deductions.  (Id. at 17.)

Plaintiffs argue that the improper deductions were neither inadvertent nor isolated. (See Pls.' Mem. in Opp. at 25–26.)   They argue that The Tile Shop's "policy and practice" of making negative bonus salary deductions, evidenced by the threats of Regional Managers and other Tile Shop executives, demonstrates that the deductions were not inadvertent.  (See id. at 25.)  Plaintiffs further contend that the number and dollar amount of the deductions show they were not isolated.[10]  (See id.)

The DOL describes inadvertent deductions as "those taken unintentionally, for example, as a result of a clerical or time-keeping error."  Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, Department of Labor, 69 FR 22122-01, 22181, 2004 WL 865626(F.R.) (Apr. 23, 2004) (hereinafter, "DOL Comments on 29 C.F.R. § 541.603").  Taking the facts and reasonable inferences in the light most favorable to Plaintiffs, the Court cannot conclude that The Tile Shop's negative bonus deductions from Store Managers' salaries were inadvertent as a matter of law.  Regional Manager Granados' email[11] in which he threatened to take performance-based deductions from salaries, combined with the Plaintiffs' assertions that other Regional Managers and Tile Shop executives made

---

[10]   Again, Plaintiffs' argument rests on their understanding that deductions from commissions and spiffs were also improper.  As described above, such deductions were *not* improper.  See supra Part II.B.1.

[11]  To be clear, irrespective of the result in this case, the Court in no way condones or approves of the threatening language used by Granados.

similar threats, creates a fact issue.  These threats are evidence of intent—on the part of some Regional Managers—to improperly deduct negative bonuses from Store Managers' salaries.  However, this does not end the inquiry since the window of correction would still apply if the improper deductions were isolated.

The Court finds that the twenty-two deductions in this case were isolated.  The DOL provides the following non-exhaustive list of factors to consider when deciding whether deductions are isolated: (1) the number of improper deductions; (2) the time period over which the deductions were made; (3) the number and geographic location of employees who experienced deductions; (4) the number and geographic location of managers who made the deductions; and (5) if the employer had a clearly communicated policy permitting or prohibiting improper deductions.  DOL Comments on 29 C.F.R. § 541.603, 69 FR at 22181 (explaining that the factors set forth in 29 C.F.R. § 541.603(a) inform whether deductions are "isolated" under the window of correction).

The total number of improper deductions here—twenty-two—is relatively small.  The isolated nature of these deductions is perhaps best exemplified by the fact that there were a total of 4,737 Store Manager-paychecks issued between March of 2011 and March of 2014, but less than 0.5% of those checks were subject to an improper salary deduction.  Averaged over these three years, there were fewer than eight deductions per year.  Similarly, only sixteen out of 150 Store Managers nation-wide experienced an improper salary deduction during that period.

There is no evidence that The Tile Shop has a written policy that allows, or disallows, negative bonus deductions from Store Managers' fixed salaries.  The threats of

Regional Manager Granados and allegedly others are some evidence of an "unwritten" policy of improper deductions. However, all these threats came from individuals who did not have the authority to set payroll policy or actually take deductions. Moreover—on at least twelve occasions—Store Managers' negative bonuses exceeded commissions and spiffs, but were *not* deducted from fixed salaries. If The Tile Shop had a policy allowing for negative bonus deductions from salaries, one would expect that these twelve instances would have resulted in improper deductions. At a minimum, it cannot be said that this evidence shows a "clearly communicated policy" allowing for improper salary deductions.

The undisputed facts show that the improper deductions were isolated. Thus, the Court holds that the twenty-two improper salary deductions were isolated and the window of correction applies. See Crabtree v. Volkert, Inc., No. CIV.A. 11-0529-WS-B, 2012 WL 6093802, at *9 (S.D. Ala. Dec. 7, 2012) (holding that improper deductions from one percent of checks issued to certain employees over approximately three years were isolated and thus the window of correction applied); Parmar v. Safeway Inc., No. C10-421 MJP, 2011 WL 888238, at *7 (W.D. Wash. Mar. 14, 2011) (granting summary judgment based in part on the conclusion that six allegedly improper salary deductions from one employee in just over a year were isolated and thus the window of correction applied).

The only remaining issue then is whether The Tile Shop must satisfy the actual practice provision in order to employ the window of correction.

### 3.  The Actual Practice Provision and the Window of Correction

Plaintiffs argue that the actual practice provision controls the result here and is not met as a matter of law.  (See Pls.' Mem. in Opp. at 13–18 (looking at the factors enumerated in 29 C.F.R. § 541.603(a)).)  Implicit in this argument is that unless The Tile Shop can satisfy the actual practice provision, the window of correction is unavailable. Conversely, The Tile Shop contends that the window of correction alone entitles it to summary judgment.  (Def.'s Reply at 12–14; see Def.'s Mem. in Supp. at 15–19.) However, it also contends that even if the actual practice provision applied, the undisputed facts show that provision is satisfied as a matter of law.  (See Def.'s Mem. in Supp. at 19–31; Def.'s Reply at 6–12.)  For the reasons discussed below, the Court holds that although the actual practice provision and window of correction are closely related, the window of correction is an independent basis by which the FLSA exemption may be preserved despite some improper deductions.  Furthermore, even if the actual practice provision controlled here, it is satisfied as a matter of law.

### a.  The Relationship Between the Regulatory Provisions

Before 2004, the regulations governing the salary basis test looked considerably different than they do today.  See 29 C.F.R. § 541.118.  Relevant to the present matter, the pre-2004 regulation regarding the effect of improper deductions read:

> The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case.  Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis.  In such a case the exemption would not be applicable to him during the entire period when such deductions were being made.  On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made

for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6). Notably, besides the previously quoted subsection, 29 C.F.R. § 541.118 made no mention of the effect of an employer's intent to make improper deductions or its "actual practice" of making such deductions. It was not until the Supreme Court held that the salary basis test was not satisfied if an employer had "*either* an actual practice of making such [improper] deductions *or* an employment policy that creates a 'significant likelihood' of such deductions" that the term "actual practice" became part of the salary basis test vernacular. See Auer v. Robbins, 519 U.S. 452, 461 (1997) (emphasis added). However, Auer did not address whether the window of correction (then, 29 C.F.R. § 541.118(a)(6)) was applicable to an employer with an "actual practice" of making improper salary deductions and a circuit split on this issue grew. See Belcher v. Shoney's, Inc., 30 F. Supp. 2d 1010, 1022 (M.D. Tenn. 1998) (noting the split and collecting cases).

In the early 2000s, the Department of Labor (the "DOL") began working on major revisions to the FLSA regulations. See generally DOL Comments on 29 C.F.R. § 541.603, 69 FR 22122-01. This included revamping the regulations related to the salary basis test and the effect of improper deductions. See id. 69 FR at 22179–83. The DOL acknowledged that the then-existing window of correction (29 C.F.R. § 541.118(a)(6)) was not "a model of clarity[,]" especially when it came to the effect of improper deductions. Id. at 22181. The new regulatory framework aimed to resolve those short-comings. See id. at 22181–83.

Initially, the DOL proposed a single subsection that contained both the actual practice language of <u>Auer</u> and a sentence providing that "isolated or inadvertent" improper deductions would not result in loss of the FLSA exemption.  <u>Id.</u> at 22179. However, the final rule made a number of "substantive changes" that included separating the window of correction (§ 541.603(c)) and actual practice provision (§ 541.603(a)) into distinct subsections.  <u>Id.</u>  The DOL explained that the new window of correction, § 541.603(c), "contains language taken from proposed subsection 541.603(a) and the existing 'window of correction' in current subsection 541.118(a)(6) regarding the effect of 'isolated' or 'inadvertent' improper deductions."  <u>Id.</u> at 22181.  It then defined "inadvertent" and "isolated," as described above.  <u>Id.</u>; <u>see</u> <u>supra</u> Part II.C.2.

The DOL also provided several examples of how the new subsections of 541.603 were related, but ultimately operated independently.  <u>See, e.g.</u>, <u>id.</u> 69 FR at 22181 (describing how the new window of correction and safe harbor[12] subsections would clarify where employers could maintain the FLSA exemption, despite some improper deductions), 22182 ("We intend this safe harbor provision to apply, for example, where an employer has a clearly communicated policy prohibiting improper deductions, but a manager engages in an actual practice (neither isolated nor inadvertent) of making improper deductions."), and 22183 ("[The safe harbor provision] applies, moreover,

---

[12] Subsection (d), generally referred to as the "safe harbor provision," allows employers with certain policies and procedures designed to identify and prevent improper salary deductions to preserve the FLSA exemption if, despite these precautions, some improper deductions occur.  <u>See</u> 29 C.F.R. § 541.603(d).  The Tile Shop does not invoke the safe harbor provision.

regardless of the reasons for the improper pay deductions."). Subsection (e)'s admonishment that § 541.603 "not be construed in an unduly technical manner so as to defeat the exemption" further supports the conclusion that the DOL intended § 541.603's subsections to offer independent bases by which an employer might preserve the FLSA exemption despite some improper salary deductions.[13] Notably, at no time did the DOL suggest that intentional, improper deductions would automatically foreclose the window of correction.

Despite this history and the amendments to § 541.603, some courts continue to treat the actual practice provision as a "prerequisite" that must be satisfied before an employer can use the window of correction. See, e.g., Scholtisek v. Eldre Corp., 697 F. Supp. 2d 445, 453 (W.D.N.Y. 2010); Shafir v. Continuum Health Care Partners, Inc., No. 12-CV-5794 (KBF), 2016 WL 205435, at *5 (S.D.N.Y. Jan. 15, 2016); Swartz v. DJ Eng'g, Inc., No. 12-CV-01029-DDC-KGG, 2015 WL 4139376, at *16 (D. Kan. July 9, 2015); Castellino v. M.I. Friday, Inc., No. CIV.A. 11-261, 2012 WL 2513500, at *9 (W.D. Pa. June 29, 2012); Santos v. Just Wood Furniture, Inc., No. 7:05-CV-9369 (WWE), 2009 WL 1616497, at *6 (S.D.N.Y. Jan. 14, 2009); see also Crabtree, 2012 WL 6093802 at *10–11 (noting the 2004 amendments and the unclear "interplay" between the

---

[13] Later, in an opinion letter, the DOL again affirmed that the actual practice provision (§ 541.603(a)) and window of correction (§ 541.603(c)) were independent bases on which an employer might lose or retain the FLSA exemption in the face of improper salary deductions. See Opinion Letter Fair Labor Standards Act (FLSA), Dept. of Labor, 2005 WL 3308612, at *3 (October 24, 2005) ("An employer will lose the exemption if it has an actual practice of making improper deductions that demonstrates it did not intend to pay employees on a salary basis. On the other hand, isolated or inadvertent deductions do not result in loss of the exemption if the employer reimburses the employees for the improper deductions.").

actual practice provision and window of correction, but assuming without deciding—because the parties failed to brief the issue—that the actual practice provision "is indeed a preliminary hurdle that an employer must overcome before it may unlock the window of correction"). Others courts have essentially combined the actual practice provision and window of correction into a single analysis. See, e.g., Smith v. Pepper Source, Ltd., No. 5:12-CV-05027, 2013 WL 2250305, at *3–4 (W.D. Ark. May 22, 2013); Parmar, 2011 WL 888238 at *7.

To the extent that the cases just described held that the window of correction is only available where an employer first satisfies the actual practice provision, this Court respectfully disagrees. This concept—that the actual practice provisions is a prerequisite that must be met before employing the window of correction—appears to rest heavily on the assumption that the window of correction is available only in cases of unintentional *and* isolated deductions. However, as just described, that assumption is incorrect. See supra Part II.C.1.; Ellis, 779 F.3d at 1204–05 (rejecting the argument that the window of correction should be "read in context" with the actual practice provision such that it applies "only when there is no other evidence of the employer's intent, such as a policy allowing deductions" since that would be precisely the sort of "unduly technical" read of the regulation, meant to defeat the exemption, that § 541.603(e) cautions against).

Although the actual practice provisions and window of correction are closely related, they are distinct. The actual practice provision describes how an employer can lose the FLSA exemption by not intending to pay employees on a salary basis, as evidenced by having an actual practice of making improper deductions. In contrast, the

window of correction allows an employer to maintain the FLSA exemption even where it has taken isolated or inadvertent deductions.  If an employer has an actual practice of making improper deductions, those deductions were not inadvertent in the sense that they were not the unintentional result of a clerical or time-keeping error.  See DOL Comments on 29 C.F.R. § 541.603, 69 FR at 22181.  However, those same deductions might be isolated, in which case the window of correction would still apply.[14]  See Ellis, 779 F.3d at 1205.

Even if the actual practice provision controlled the result here, for the reasons described below, the Court holds as a matter of law that The Tile Shop did not have an actual practice of taking improper deductions.

### b.  Actual Practice

The Tile Shop avers that it did not have an actual practice of making improper salary deductions.  (See Def.'s Supp. Br. at 3–4 [Doc. No. 86].)  It claims that the improper deductions that did occur were simply mistakes that resulted from a Human Resources department and payroll system that did not keep up with The Tile Shop's rapid expansion during this time.  (Behrman Decl. at ¶ 4.)  As evidence that The Tile Shop did not have an actual practice, it points to: (1) the twelve instances where deductions were possible but not taken (which it contends is the minimum number of times this occurred), (2) Human Resource's practice of flagging negative bonuses and ensuring that any amounts exceeding commissions and spiffs were not deducted from salary, (3) the

---

[14] The Court acknowledges that it would be rare—based on the considerations set forth in the actual practice provision—for an employer to have an actual practice of taking improper deductions, but for the number of deductions taken to be isolated.

sporadic and isolated nature of the improper deductions that did occur, and (4) the fact that when improper deductions were brought to The Tile Shop's attention, they were immediately remedied. (Def.'s Supp. Br. at 3–4; Def.'s Mem. in Supp. at 25–28.) The Tile Shop also notes that it is Plaintiffs' burden to put forth evidence of an actual practice and argues that they fall short of satisfying that requirement. (Def.'s Supp. Br. at 3 (citing Yourman v. Giuliani, 229 F.3d 124, 128 (2d Cir. 2000)).)

Plaintiffs contend that there is a question of fact as to whether The Tile Shop had an actual practice of making improper deductions. (Pls.' Mem. in Opp. at 13–22.) Specifically, they point to: (1) the twenty-two improper deductions that were taken, and (2) the statements made by Regional Manager Granados—and those allegedly made by other Regional Managers and executives—to the effect that negative bonuses could be deducted from salaries.[15] (See id.) Plaintiffs also object to The Tile Shop's evidence that on at least twelve occasions, negative bonuses exceeded commissions and spiffs, but were not deducted from salaries. (Pl.'s Supp. Br. at 2–4.) They contend that this new evidence should be "ignored" because it was not produced to Plaintiffs in discovery and because its veracity cannot be assessed. (See id.) The Court addresses Plaintiffs' objections to this evidence first.

_____

[15] Plaintiffs also make much of the fact that Store Managers' paychecks listed negative bonuses on a line immediately below the one for their fixed salary—a fact they argue proves that negative bonuses were always deducted from salary. (Pls.' Mem. in Opp. at 18–19.) However, the evidence definitively rejects this understanding. On at least twelve occasions, negative bonuses exceeded commissions and spiffs, but were not deducted from Store Managers' salaries. See supra Part I.A. If Plaintiffs were correct, these twelve instances would instead have resulted in additional improper deductions. Although the placement of negative deductions on Store Managers' paychecks may be confusing, it is not evidence of an actual practice of making improper salary deductions.

Plaintiffs note that The Tile Shop's evidence of instances where improper deductions were possible, but not taken, was not produced during discovery.  (Id. at 2–3.) They explain that despite requesting payroll data for all Store Managers, The Tile Shop objected to this request on relevance grounds and produced only the payroll data related to Plaintiffs.  (Id.)  However, Plaintiffs do not allege that they challenged this limited production or that The Tile Shop was ever ordered to produce all payroll data.  There is no indication in the record that Plaintiffs ever brought such a challenge.

The Tile Shop did object to Plaintiffs' request for all Store Manager payroll data on the basis that only the data related to the Plaintiffs was relevant.  The Tile Shop further explained that it was withholding payroll data for Store Managers who were not Plaintiffs, but produced the data for those that were.  Although The Tile Shop's position as to the relevance of this information was likely not justified, Plaintiffs never pursued their initial request for all payroll data, nor did they argue at the time that all payroll data was in fact relevant.  Thus, The Tile Shop had not been ordered to produce this evidence until this Court ordered that production to supplement the record on summary judgment. (See Doc. No. 81.)

Furthermore, even if The Tile Shop improperly withheld this evidence, that would not warrant disregarding this evidence on summary judgment.  This evidence is relevant to whether or not The Tile Shop had an actual practice of making improper deductions from Store Managers' salaries.  Once The Tile Shop produced this evidence, Plaintiffs had three weeks to assess it and respond, including the opportunity to present new evidence of their own.  (See Doc. Nos. 81, 91.)

29

Plaintiffs also argue that the new evidence should be disregarded because "the facts and circumstances which produced the [new evidence] remain a mystery." (Pls.' Supp. Br. at 3.)   The Court disagrees.   The Tile Shop provided a sworn affidavit explaining how the payroll data was audited and what that audit showed, including a spreadsheet that gave detailed information about the twelve instances in which Store Managers' negative bonuses exceeded commissions and spiffs, but were not deducted from salaries.   (See Rasmussen Decl.; Supp. Payroll Audit.)   Plaintiffs present no evidence of their own to refute these numbers, nor do they provide any compelling reason why the Court should doubt the veracity of this evidence.

Turning to the merits of the parties' arguments about whether The Tile Shop had an actual practice of making improper salary deductions, the Court holds as a matter of law that it did not.   As previously described, the improper deductions were isolated.   See supra Part II.C.2.   Twenty-two deductions, taken over three years from only sixteen out of 150 Store Managers, constituting 0.5% of all Store Manager paychecks issued during that period, and totaling approximately $5,000 is not evidence that The Tile Shop intended to pay its Store Managers on something other than a salary basis.   See 29 C.F.R. § 541.603(a); Ellis, 779 F.3d at 1196 (holding that isolated deductions by definition did not show an "actual practice"); Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 372 (7th Cir. 2005) ("Identifying a few random, isolated, and negligible deductions is not enough to show an actual practice or policy of treating as hourly the theoretically salaried."); Cash v. Cycle Craft Co., 508 F.3d 680, 684 (1st Cir. 2007) ("[T]wo aberrant paychecks out of the approximately 50 that [the plaintiff] received do not amount to an

'actual practice.'"); Pepper Source, 2013 WL 2250305 at *4 (granting the defendant-employer summary judgment and finding there was no actual practice based on only nine deductions from three plaintiff-employees' salaries).  This is especially true since on at least twelve occasions, improper deductions were possible, but avoided.

The statements by Regional Manager Granados—and those allegedly made by other Regional Managers and executives—to the effect that negative bonuses could and would be deducted from salaries do not alter this conclusion.  These threats—however ill-advised and incorrect they were—came from managers who were not capable of following through on them (i.e., they did not have the authority or ability to actually take improper deductions).  These threats were belied by the fact that on at least twelve occasions, a deduction was possible but not taken.  Moreover, The Tile Shop produced sworn testimony from Human Resources executives—those with the ability to take deductions and charged with setting policy for when deductions are taken—that the policy was to prevent salary deductions, even when a negative bonus exceeded commissions and spiffs.  See supra Part I.A.  The Tile Shop did not have a "clearly communicated policy" one way or the other when it came to deducting negative bonuses from salaries.  See Carlson v. C.H. Robinson Worldwide, Inc., No. 02-cv-3780 (JNE/JGL), 2005 WL 758601, at *9 (D. Minn. Mar. 30, 2005) (granting the defendant-employer summary judgment after concluding that it did not have an actual practice of improper deductions based on five salary deductions from non-plaintiff employees at two branches and alleged threats from a manager to the plaintiffs that such deductions would be taken).

The Regional Managers' improper threats that negative bonuses would be deducted from Store Managers' salaries are evidence of human error or rogue managers, but not an actual practice of taking improper deductions.   The Crabtree case is informative on this point.   See 2012 WL 6093802.   There, a manager intentionally took deductions from employees' salaries based on her mistaken belief that those deductions were permitted, if not required, under company policy.   Id. at *3–4.   The plaintiff-employees claimed this was evidence that their employer had an actual practice of making improper deductions.   Id. at *11 n.21.   However, the court rejected this argument on summary judgment:

> If . . . a single manager's misunderstanding is automatically dispositive of the employer's intent for subsection (a) purposes, surely the regulation would not have specified that the number of managers making improper deductions was a relevant factor.   By wording the regulation as it did, the DOL is acknowledging that the outcome of the "actual practice" inquiry differs where a single rogue manager imposes improper deductions, versus where myriad managers are doing so.   The latter circumstance would obviously be far more probative of an employer's actual practice of making unlawful deductions than would the former.   For all of these reasons, the Court cannot accept plaintiffs' contention that [the manager's] "actual practice" is all that matters for the § 541.603 inquiry; rather, the clear language of that regulation specifies that it is the *employer's* actual practice (not that of a single misinformed, confused, or even malicious/rogue manager) that is relevant.   Plaintiffs have not argued—and cannot reasonably argue on this record—that [the employer] as a whole ever had an "actual practice" of making the unlawful deductions at issue.

Id. (emphasis original).   Other courts agree—albeit while considering other parts of FLSA—that the improper acts of a few rogue managers, even when intentional, are not evidence that an employer has an actual practice of violating FLSA.   See Thompson v. Speedway SuperAmerica LLC, No. 08-cv-1107 (PJS/RLE), 2009 WL 130069, at *2 (D.

Minn. Jan. 20, 2009) (refusing to conditionally certify a class because the plaintiffs failed to show that the alleged FLSA violations were the result of a "policy-to-violate-the-policy" rather than human error or the acts of a rogue store manager); Seever v. Carrols Corp., 528 F. Supp. 2d 159, 174 (W.D.N.Y. 2007) (same); Brickey v. Dolgencorp., Inc., 272 F.R.D. 344, 348 (W.D.N.Y. 2011) (same).   Moreover, to hold that the Regional Managers' threats and the twenty-two improper deductions constituted an actual practice would expose The Tile Shop to potentially millions of dollars in overtime liability—a result the case law cautions against.  See Paresi v. City of Portland, 182 F.3d 665, 668 (9th Cir. 1999) ("Application of the [pre-2004] window of correction on these facts [two improper deductions and the threat of others] is consistent with the text of the regulation, with precedent, and with the policy underlying the administration of the salary basis test of "avoiding the imposition of massive and unanticipated overtime liability." (quoting Auer, 519 U.S. at 461)).

## III.    CONCLUSION

In sum, the Court holds as follows.  First, only The Tile Shop's deductions from Store Managers' fixed salaries were improper under FLSA.   Performance-based deductions from commissions and spiffs were permitted under the law.  Second, the window of correction allows for an employer to maintain the FLSA exemption if improper salary deductions are *either* inadvertent *or* isolated.  Third, The Tile Shop's improper deductions from Store Managers' salaries were isolated and thus the window of correction applies.  Fourth, the window of correction is an independent basis by which the FLSA exemption may be preserved and is not dependent on the actual practice

provision.  Fifth, even if the actual practice provision controlled the result here, The Tile Shop did not have an actual practice of making improper salary deductions.  Thus, the Court grants The Tile Shop's Motion for Summary Judgment.

## IV.     ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT:**

1.  Defendant's Motion for Summary Judgment [Doc. No. 66] is **GRANTED** and Plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: January 25, 2017                    s/ Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge